536 A.2d 440

**In the Interest of Corey PARKS.**

**Appeal of Corey PARKS.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 1987.

Filed Jan. 27, 1988.

352

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BECK, KELLY and HOFFMAN, JJ.

KELLY, Judge:

Appellant, Corey Parks, appeals from his adjudication of delinquency in connection with eleven burglary offenses. We affirm.

Appellant is a sixteen year old juvenile. On the afternoon of January 23, 1986, appellant and another youth were arrested in the vicinity of a burglary which occurred approximately twenty minutes earlier. Stolen property was recovered from the juveniles at the time of the arrest. On January 23, 1986 and January 28, 1986, appellant made three detailed confessions regarding his participation in numerous burglaries. On May 1, 1986, appellant's motion to suppress his confessions was denied. On May 13, 1986, appellant was adjudicated delinquent on all eleven petitions presented to the juvenile court (each alleging a single

burglary offense). Post-adjudication motions were denied. Timely notice of appeal was filed, and this appeal is now properly before this Court for disposition.

Appellant contends on appeal that: based upon the doctrine of incontrovertible facts the evidence is insufficient to sustain the adjudications with regard to two of the eleven burglary offenses; appellant was subjected to an unreasonable search and seizure when he was driven around the city by the police to point out the locations of burglaries he had committed, as the police were in violation of an order directing the police to transport appellant for charging and then return him to the youth study center; appellant's rights under 42 Pa.C.S.A. § 6326(a) and Pa.R.Crim.P. 122 and 130 were violated by holding appellant for investigation and interrogation on January 23, 1986 and January 28, 1986, before returning appellant to the Youth Study Center; and finally, the trial court erred in failing to suppress appellant's detailed confessions based upon the Commonwealth's failure to meet its burden of proof that appellant made a voluntary, knowing and intelligent waiver of his *Miranda* rights under the totality of the circumstances test established in *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984).[1] We find no merit in these contentions.

## I.

Appellant first contends that based upon the incontrovertible facts doctrine, the evidence is insufficient to sustain the adjudications with respect to two of the burglary offenses. Appellant argues that because public records indicate appellant was incarcerated at the Youth Study Center on the days that two of the burglaries were alleged to have occurred, the incontrovertible facts doctrine applies. We cannot agree.

The incontrovertible facts doctrine applies, if at all, only when an undisputed fact negates the existence of a required element of an offense. *Commonwealth v. New-*

---

1. Appellant also argued in the trial court that his original detention and arrest were illegal; he has not raised this contention on appeal.

*man,* 323 Pa.Super. 394, 470 A.2d 976 (1984). The mere fact that public records indicate that appellant was incarcerated on the date that two of the eleven burglaries took place does not conclusively establish that he could not have committed the burglaries. The records could be in error, appellant could have been incarcerated after the offense were committed on those days, or he could have been released or otherwise absent from the facilities at any time on those dates. The doctrine upon which appellant bases his first claim simply does not apply. We note that appellant's confessions regarding both of the burglaries in question contained specific details regarding the burglaries which were corroborated by the victims' reports of those burglaries, including details regarding the method of entry and items stolen. (*See* Commonwealth Exhibits Nos. 2 and 3; N.T. 3/20/86 at 86, 116). Thus, we reject appellant's first contention on appeal.

## II.

■ Appellant next contends that he was subjected to an unreasonable search and seizure when he was driven around the city by police to point out the locations of his numerous burglaries, as the police were allegedly in violation of an order directing the officers to take appellant for charging and then return him to the Youth Study Center. Appellant's contention, however, was waived by appellant's failure to raise this issue/theory in the juvenile court during the suppression hearing. It is axiomatic that appellate courts will not entertain for the first time on appeal issues or theories not posited first in the courts below. *Commonwealth v. Johnson,* 355 Pa.Super. 123, 140–41, 512 A.2d 1242, 1251 (1986).

■ Moreover, we note that the juvenile court found, as fact, that after being charged and prior to his return, appellant initiated a conversation with the investigating officers and indicated a desire to make a statement regarding the burglaries. Under these circumstances, the subsequent delay in returning appellant to the Youth Study

Center while appellant voluntarily assisted the officers in identifying the scenes of the various burglaries was not unreasonable. We note that the court which issued the order (which appellant claims had been violated) took no action to enforce its order or sanction the alleged violation. Thus, we reject appellant's second contention on appeal.

## III.

■ Appellant next contends that the police violated appellant's rights pursuant to 42 Pa.C.S.A. § 6326(a), Pa.R. Crim.P. 122, and Pa.R.Crim.P. 130 by unreasonably detaining appellant on January 23, 1986 and January 28, 1986 for questioning before returning him to the Youth Study Center. Appellant argues that the statements made during these interrogations should have been suppressed. We cannot agree.

Appellant voluntarily offered to make statements regarding various burglaries immediately after his arrest was processed, and again after a subsequent arraignment. Our review of the record discloses no *unnecessary* delay as envisioned by 42 Pa.C.S.A. § 6326, Pa.R.Crim.P. 122, or Pa.R.Crim.P. 130. Rather, any delay was the consequence of the number of separate crimes to which appellant confessed. We see nothing unreasonable in the delay occasioned by the officers driving appellant to the scene of the burglaries *at appellant's request* in order that specific addresses could be determined. (Commonwealth Exhibit No. 3, at 3) ("I could do better if you take me around my route and I can show them to you"). We also note that a portion of the alleged delays was occasioned by the officers' efforts to enable appellant to speak with an "interested adult" whom appellant had falsely identified as his mother, then later as his aunt and guardian. (N.T. 3/20/86 at 37–38, 50, 56–7, 141 & 147). Succinctly, the confessions were not the product of delay, nor were the delays occasioned by the confessions unreasonable. *Compare In Interest of Anderson*, 227 Pa.Super. 439, 313 A.2d 260, 263 (1973) (police may detain juvenile for processing and reasonable interrogation), *with In Interest of Schirner*, 264 Pa.Su-

per. 185, 399 A.2d 728 (1979) (detention unreasonable when statements not made until nine and one-half hours after arrest). Thus, we reject appellant's third contention on appeal.

## IV.

■ Finally, appellant contends that the Commonwealth failed to meet its burden to establish by the preponderance of the evidence that under the totality of circumstances, appellant's waiver of *Miranda* rights and subsequent confessions were knowingly, intelligently, and voluntarily made. Appellant argues that there was no evidence presented regarding appellant's age, experience, or comprehension and that the purported opportunity to consult with an interested adult was inadequate; and therefore, the suppression court erred in finding that the confessions were admissible. We cannot agree.

In *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984), our Supreme Court held:

The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

475 A.2d at 1288.[2] In the instant case, the trial court applied the totality of circumstances test to the evidence presented and concluded that appellant's waiver of his *Miranda* rights and his detailed confessions were knowing-

---

**2.** *Williams* expressly overruled *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983) (recognizing a rebuttable presumption that a juvenile was incompetent to effect a valid waiver without having the opportunity to consult with an interested adult), which had overruled *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975) (announcing *per se* rule requiring that juvenile have an opportunity to

ly, intelligently, and voluntarily made. Suppression Court Opinion 9/30/86 at 15–24.

Our scope of review of trial court decisions regarding the decision of a trial court on suppression issues is limited primarily to questions of law; we are bound by the trial court's findings of fact if those findings are supported by the record. In determining whether the findings of fact are supported by the record, we are to consider only the evidence of the appellee and so much of the evidence of the appellant as remains uncontradicted. It is for the suppression court as the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. White,* 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986). The suppression court found that the Commonwealth had met its burden to establish by a preponderance of the evidence that appellant's confessions were the product of a knowing, intelligent and voluntary waiver of appellant's *Miranda* rights. We find no basis to disturb this determination.

The record discloses that appellant was physically present at the suppression hearing (N.T. 3/20/86 at 82, 111); he was described by a witness as being in his teens (N.T. 3/20/86 at 20); and appellant's age, 16, was indicated on several of the forms admitted as exhibits in the suppression hearing. (*See* Commonwealth Exhibits Nos. 1–3; Defense Exhibit No. 1). There was ample evidence presented to permit consideration of appellant's age.

The record discloses that appellant, sometimes alone and sometimes with others, burglarized numerous homes over a period of several months (N.T. 3/20/86 at 40, *passim;* Commonweatlh Exhibits Nos. 1–3); appellant was previously known to the police, the police had his name and his

consult with an interested adult before waiving *Miranda* rights). *See* Comment, *Now My Son, You Are a Man: The Judicial Response to Uncounseled Waivers of Miranda Rights By Juveniles in Pennsylvania,* 92 Dickinson L.Rev. 153, 156–166 (1987) (same); Comment, *Around and Around on Pennsylvania's Juvenile Confession Carousel: This Time Police Get the Brass Ring,* 30 Vill.L.R. 1235, 1254–64 (1985) (tracing development of Pennsylvania juvenile confession law); Note, *Prosecution May Show By a Totality of the Circumstances That a Juvenile Defendant Effectively Waived His or Her Miranda Rights,* 58 Temple L.Q. 399, 399–407 (1985) (same).

photograph in the police car at the time of his arrest (N.T. 3/20/86 at 33); numerous (albeit vague) references to prior and contemporaneous criminal acts by appellant were made throughout the hearing (*see e.g.* N.T. 3/20/86 at 40, 145–146); appellant attempted to give the police a false name (N.T. 3/20/86 at 33), falsely gave his friend's address as his home (N.T. 3/20/86 at 53, 145), and falsely stated that Mrs. Figueroa was his mom, then aunt (N.T. 3/20/86 at 37–38, 50, 56–7, 141, 147). Mrs. Figueroa explained that appellant was an "associate" of her son; appellant slept and ate at her house sometimes; she knew that appellant had identified her home as his residence and her as his aunt; and, she felt he was giving her address so that the police would not find out he was not where he was supposed to be. (N.T. 3/20/86 at 152). The record clearly supports the trial court's conclusion that appellant's conduct exhibited criminal sophistication, and thus provided an ample basis for evaluating appellant's "experience." *See* Suppression Court Opinion 9/30/86 at 18–19.

The record further discloses that appellant could read and write (N.T. 3/20/86 at 96, 117–118); in two of appellant's confessions appellant specifically stated that he could read and write. (*See* Commonwealth Exhibit No. 1 at 3; Commonwealth Exhibit No. 2 at 3). He had sufficient perception, memory, and intellect to recall and describe to the officers details of numerous crimes and to direct them to the locations where they occurred. (N.T. 3/20/86 at 40, *passim;* Commonwealth Exhibits Nos. 1–3). Appellant was given his *Miranda* rights in simple, easy to understand language several times and each time indicated his willingness to waive his rights and to make statements. (Commonwealth Exhibits Nos. 1–3). We find there was a sufficient basis for the trial court to evaluate appellant's ability to comprehend his rights and his waiver of those rights. With regard to the first three prongs of the four prong *Williams* test, we find the absence of litany responses to a colloquy regarding appellant's age, experience, and comprehension did not impede consideration of those factors by the suppression court in the instant case.

Finally, we note that it was for the trial court to resolve the conflict in the evidence with respect to whether Mrs. Figueroa informed police that she was not appellant's aunt and guardian and whether she authorized questioning after having been informed of appellant's *Miranda* rights. The trial court was entitled to reject Mrs. Figueroa's version of the facts in favor of the police officers' testimony. (*Compare*, N.T. 3/20/86 at 37–38, *and* N.T. 3/20/86 at 141–43). Therefore, for the purpose of this appeal, we must accept that: the police contacted an individual who both the appellant and the individual identified as an interested adult; the individual was informed of appellant's *Miranda* rights; and the individual authorized the police to question appellant. Suppression Court Opinion 9/30/86 at 21–24. While the fact that appellant did not actually speak to the person he identified as an interested adult is a factor which weighs against admissibility, we note that the suppression court found as fact that appellant had the "opportunity" to speak to Mrs. Figueroa, but that he declined it. Suppression Court Opinion at 23–24; (*see also* N.T. 3/20/86 at 121). We find the trial court's conclusion that appellant declined his opportunity to speak to an interested adult to be a reasonable inference based upon the testimony presented.

We find no error of law in the trial court's conclusion that under the totality of circumstances test announced in *Commonwealth v. Williams, supra,* the detailed confessions made by appellant were admissible. We note that appellant specifically stated in his confessions that he was not illiterate, intoxicated, under the influence of drugs, promised special treatment, or in any way coerced by the police. (Commonwealth Exhibits Nos. 1–3). No evidence was produced to disprove or to call those statements into question. Appellant's fourth and final contention is without merit.

## CONCLUSION

Based upon the foregoing, the order is affirmed.

HOFFMAN, J., files a dissenting opinion.

360

HOFFMAN, Judge, dissenting:

After carefully reviewing the record in this case, I conclude that I must dissent from the majority's conclusion that the Commonwealth met its burden of proving that appellant's confessions were made knowingly, intelligently, and voluntarily.

On January 23, 1986, appellant was arrested and charged with burglary. He was given *Miranda* warnings and then transported to the home of Lenora Figueroa, whom appellant had indicated was his mother. After learning that Ms. Figueroa was not at home, the police telephoned her at work. She told police that she was not appellant's mother, but rather his aunt.[1] N.T. March 20, 1986 at 37. The police officer informed Ms. Figueroa of appellant's rights and she gave the officer permission to question him. *Id.* at 38. Appellant did not speak with Ms. Figueroa. Two police officers then drove appellant through the neighborhood while appellant pointed out additional houses that he had burglarized. Appellant was returned to the police station where he signed a written statement detailing what he had earlier told police. Later that same evening, two other police officers drove appellant through the neighborhood while he pointed out more houses that he had burglarized. Again, appellant signed a written statement detailing his involvement in the burglaries. He then was turned over to the custody of the Youth Study Center.

On January 28, 1986, appellant was arrested on additional burglary charges. He was given *Miranda* warnings and then driven to Ms. Figueroa's home. The police again telephoned Ms. Figueroa at work and she gave the officer permission to question appellant. Appellant did not speak to Ms. Figueroa. Two police officers then drove appellant through the neighborhood and appellant pointed out additional homes he had burglarized. He then signed another

1. Testimony at the suppression hearing revealed that Ms. Figueroa was not related to appellant nor was she his legal guardian. Ms. Figueroa testified that appellant was her son's friend and that he spent the night at her house and had meals there frequently for several months prior to his arrest. N.T. March 20, 1986 at 145–49.

written statement detailing his involvement in the additional burglaries.

Appellant filed a motion to suppress his statements to the police and, following a hearing, the motion was denied. He was adjudicated delinquent on eleven charges of burglary following a hearing at which evidence was entered by stipulation. Appellant was committed to two years at Cornwells Heights Security Unit and this appeal followed.

Appellant contends that the lower court erred in denying his motion to suppress his statements because the Commonwealth failed to meet its burden of proof that the confessions were the product of a knowing, intelligent, and voluntary waiver of his *Miranda* rights. I agree.

At a suppression hearing, the Commonwealth bears the burden of proving by a preponderance of the evidence that the challenged evidence was not obtained in violation of the accused's rights. *Commonwealth v. Otto,* 343 Pa.Superior Ct. 457, 459 n. 1, 495 A.2d 554, 555 n. 1 (1985); *Commonwealth v. Bonasorte,* 337 Pa.Superior Ct. 332, 344, 486 A.2d 1361, 1368 (1984). *See also* Pa.R.Crim.P. 323(h). "If the suppression motion has been denied, the appellate court 'will consider only the evidence of the prosecutor's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' " *Commonwealth v. Otto, supra* (quoting *Commonwealth v. Brown,* 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977)).

In *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975), our Supreme Court announced a *per se* rule requiring that a juvenile have an opportunity to consult with an interested adult before waiving his or her *Miranda* rights. The Court overruled *McCutchen* in *Commonwealth v. Christmas,* 502 Pa. 218, 465 A.2d 989 (1983), and reduced the *per se* requirement to a rebuttable presumption that a juvenile was incompetent to waive his or her constitutional rights without first having an opportunity to consult with an interested adult. *Id.,* 502 Pa. at 223, 465 A.2d at 992. In *Commonwealth v. Williams,* 504 Pa. 511, 475 A.2d

1283 (1984), our Supreme Court overruled *Christmas* and held that a juvenile need not consult with an interested adult prior to making a confession. Instead, the Court held that:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of the circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

*Commonwealth v. Williams, supra,* 504 Pa. at 521, 475 A.2d at 1288. Although the *per se McCutchen* rule is no longer the law in Pennsylvania, "the absence of the juvenile's right to confer with an interested adult will be viewed as an important factor among the totality of circumstances in determining if the waiver was voluntary." *Commonwealth v. Bebout,* 335 Pa.Superior Ct. 275, 279–80, 484 A.2d 130, 132 (1984).

Applying a totality of the circumstances analysis, I find a dearth of evidence to support the conclusion that the Commonwealth proved that appellant's statement was voluntary. First, I note that appellant was not given an opportunity to consult with an interested adult. Ms. Figueroa was not present at any of the interrogations. Additionally, appellant was never given the opportunity to consult with her. While the lower court found that Ms. Figueroa gave the police her permission to question appellant, Lower Court Opinion at 23, I would conclude that her mere permission to question appellant is insufficient to render his confession voluntary. The presence of an interested adult has been deemed important by our courts not because the adult must give the police permission, but rather because it gives the juvenile an opportunity, after the adult has been ap-

prised of the juvenile's rights and the circumstances of the arrest, to *consult* with the adult and receive *advice* concerning the waiver of his or her rights. The interested adult may not unilaterally waive those rights for the juvenile. Here, both the police officers and Ms. Figueroa testified that she only spoke to the police and never spoke to appellant. N.T. March 20, 1986 at 56, 98, 143.

The lower court concluded, however, that the fact that appellant never spoke with Ms. Figueroa was irrelevant because "he did have the 'opportunity' to speak with her but chose not to." Lower Court Opinion at 23. I disagree. The testimony at the suppression hearing does not support the conclusion that appellant was given the opportunity to speak with Ms. Figueroa. Officer O'Connor testified that on January 23, 1986, the telephone connection was broken before his conversation with Ms. Figueroa was completed and that he did not try to call her back. N.T. March 20, 1986 at 56. Officer Maahs testified that on January 28, 1986, appellant replied "Fine, let's go" when told that Ms. Figueroa had given the officer permission to take a statement from him. *Id.* at 121. It is apparent, therefore, that appellant was never asked if he wished to speak with Ms. Figueroa. Thus, it follows that he never made a choice not to speak with her.

The effect of the lower court's conclusion that appellant's confession was voluntary because he did not request to speak with Ms. Figueroa is to take away from the police the burden of protecting a juvenile's rights and to place an affirmative burden on the juvenile to demand that the police give him or her the opportunity to consult with an interested adult. I cannot tolerate this result. The very purpose of allowing a juvenile the opportunity to speak with an interested adult is that a juvenile, because of his or her age, may not be able to comprehend the gravity of the situation and make a decision regarding his or her rights that would be in his or her best interests. For this reason, it would be incongruous for this Court to assume that the same juvenile who may be too young to waive his or her rights is mature

enough to demand the counsel of an adult to protect those rights. Accordingly, because I do not believe a juvenile should be required to be so forthright, I would conclude that appellant was not given the opportunity to consult with an interested adult.[2]

Although absence of an opportunity to consult with an interested adult is not conclusive proof that a juvenile's confession was made voluntarily, *see Commonwealth v. Williams, supra,* the Commonwealth has failed to present any evidence of other *Williams* factors that would indicate that appellant's confessions were voluntary. No formal evidence of appellant's age or prior record was introduced. Moreover, no evidence was introduced regarding appellant's education level, reading ability, or general intelligence. Although the lower court acknowledged that appellant's education level is uncertain, it concluded that "it is at least clear that [appellant] was able to read since he read his statement in front of the police officer." Lower Court Opinion at 19 (citing N.T. March 20, 1986 at 41). At best, the testimony of the police officer indicates that it *appeared* that appellant was able to read his statement. Appellant did not read his statement aloud to the police and it does not appear that any one asked appellant if he could read before giving him his statement to read and sign.

The lower court also concluded that "[c]ertainly, the [appellant's] physical condition was normal at the time of his arrest and detention. Nor was the [appellant] subjected

---

**2.** The lower court also concludes that the police procedure was proper in this case because "telephonic participation has been approved" by our courts in *Commonwealth v. Webster,* 466 Pa. 314, 327, 353 A.2d 372, 378 (1975) (although juvenile was given chance to talk to his mother by telephone, statement was suppressed because no evidence that mother was advised of son's *Miranda* rights); and *Commonwealth v. Hill,* 305 Pa.Superior Ct. 560, 562, 451 A.2d 1019, 1019 (1982) (juvenile confession was voluntary because he had opportunity to speak with his mother by telephone). Lower Court Opinion at 22–23. These cases stand for the proposition that the actual physical presence of an interested adult is not required provided the juvenile has some meaningful opportunity to consult with the adult—in these cases, by telephone. These cases do not apply in the instant case because it is clear that appellant never spoke with Ms. Figueroa by telephone or otherwise.

to physical or psychological abuse." Lower Court Opinion at 18. The lower court fails to cite, and I am unable to find, any evidence in the record that would support the conclusion that appellant was in good physical condition at the time of arrest and detention. Moreover, there was no evidence regarding whether appellant had been physically or psychologically abused. Because the Commonwealth bears the burden of proof at all time during the suppression hearing, *see Commonwealth v. Otto, supra; Commonwealth v. Bonasorte, supra,* the absence of evidence that appellant was in poor physical condition or was not abused cannot automatically support the conclusion that appellant was in good physical condition or that he was not abused in any way. Furthermore, the Commonwealth failed to present evidence showing that appellant was free from the influence of alcohol or drugs at the time he made his statements. Accordingly, I would conclude that the lower court abused its discretion when it denied appellant's suppression motion because the Commonwealth failed to meet its burden of proving that appellant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights under the totality of the circumstances test enunciated in *Commonwealth v. Williams, supra.*